(C. D. 1238)

United Geophysical Co. *v.* United States

United States Customs Court, Second Division

(Decided April 28, 1950)

*James B. Christie*; *Tompkins & Tompkins* (*Allerton deC. Tompkins*, associate counsel), for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before Lawrence and Rao, Judges; Ford, J., not participating

Lawrence, Judge: The United Geophysical Co. of Los Angeles, imported a device which is described on the consular invoice as "1 set Type 268/RXF Radar equipment."

It appears from the record that the collector of customs imposed duty upon the importation at the rate of $4.50 plus 65 per centum ad valorem as a "mechanism, device, or instrument intended or suitable for measuring \* \* \* distance," having no jewels, as provided in paragraph 368 (a) (1) and (2) of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 368 (a) (1) and (2)).

Plaintiff relies upon the claim in its protest, as amended, that the merchandise is properly dutiable pursuant to the provisions of paragraph 353 of said act (19 U. S. C. § 1001, par. 353), as modified by the trade agreement between the United States and the United Kingdom, effective January 1, 1939, 74 Treas. Dec. 253, T. D. 49753, which reads, so far as pertinent, as follows:

Electrical signaling, radio * * * apparatus, instruments (other than laboratory), and devices, * * * and all other articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, and articles having as an essential feature an electrical element or device * * *; all the foregoing, not specially provided for, finished or unfinished, wholly or in chief value of metal, and not provided for heretofore in any item numbered 353 in this schedule_____25% ad val.

No oral testimony was introduced in the case. It was submitted upon an agreed statement of facts which was filed with the record herein and is identified by the initials "D. H." The character, functions, and use of the importation are so elaborately and fully described in the agreed statement of facts that it is deemed prudent to set them forth here *in extenso*, omitting certain nonessentials:

    *       *       *       *       *       *       *

2. The function and estimated performance of the radar equipment involved in this action is correctly described in "Technical Manual for Merchant Marine Type 268 Radar" published by the National Research Council of Canada, and more particularly as follows:

Page 1, SECTION I—DESCRIPTION

1. FUNCTION

The type 268 equipment is a surface warning radar set. Its primary function is to aid in the detection of surface craft within a relatively small range, depending upon the size of the detected vessel (see below), and to give fairly accurate information about their range and bearing. It may also be used as an aid to navigation by determining coastal outlines.

2. ESTIMATED PERFORMANCE

Detection ranges on targets vary with the type of target, the height of the 268 aerial, and with sea and atmospheric conditions. Rain squalls and electrical disturbances produce pictures on the screen of the cathode ray tube which interfere with efficient operation. Fog and mist reduce detection ranges slightly.

2.1 The length of the transmitter pulse and the effect of the "ground clutter" make it impossible to discern targets at less than 250 yards range. At ranges greater than 1,000 yards it should be possible to distinguish one small target from another if they are on the same bearing, but differing in range by 200 yards. If targets are less than 200 yards apart, their echoes will merge and form a short line. If a very large target visually obscures a small target behind it, no echo will be received from the small target. Bearing discrimination should be such that two small targets at 5,000 yards, 200 yards apart, may be distinguished as two separate targets.

2.2 Bearing accuracy is of the order of $\pm 2°$. When the range reading is obtained by estimating the position of the echo relative to the calibration rings, the accuracy of the range readings is $\pm 200$ yards on the 6,000 yard range, and $\pm 500$ yards or better on the 30,000 yard range. * * *

3. There are two types of radar systems; namely, pulse radar and c-w or continuous wave radar. The type 268 radar here involved is of the pulse type.

4. In the pulse radar system sharp bursts of radio energy are sent out, i. e. transmitted. When these bursts or "pulses" encounter a reflecting object they are reflected as discrete pulses which are detected by the radar receiver during the interval between the transmitted pulses.

5. The particular radar set here involved * * * operates as follows:

Radio waves at a frequency of 10,000 megacycles per second are produced by the transmitter as follows:

A 500 cycle A. C. power supply is used to trigger (start) a time base generator (1) which produces a positive saw-tooth wave form (2). This "time base" voltage (positive saw-tooth wave) is applied to a delay circuit (3) to produce a negative square wave (4) which is used to trigger the modulator (5). This voltage is reshaped and employed to supply a high voltage pulse to the transmitter (6). This pulse causes the transmitter to oscillate at a wave length of 3.2 cm, for a duration of about ¾ microsecond. This pulsed oscillation, which takes place 500 times per second, is sent through the duplexing system (7) to the aerial (8). The duplexing system acts as an automatic switch for the aerial so that it alternately transmits and receives.

The transmitted pulse, directed by the antenna, encounters an object or target in space. A radar target may be thought of as a discontinuity in the electrical properties of the medium through which the transmitted radio wave travels. If any of the electrical properties of conductivity, dielectric constant and magnetic permeability change abruptly, a current is induced at the surface of the discontinuity when the wave impinges on it. This induced current which produces reradiation from the target may be conduction current (alternating flow of free charges) or a displacement current (alternating elastic displacement of bound charges) depending upon whether the target is a conductor or dielectric. In other words the transmitted pulse on striking a target induces a current in the target which is reradiated from the target. The reradiated signal is generally propagated in all directions, i. e. the target acts as a scatterer of radio energy falling upon it. Its efficiency as a scatterer and hence the strength of the signal returned to the antenna is variously designated as the "scattering cross section", "radar cross section" or simple "echo area". The duplexing system, acting as a switch, renders the antenna or aerial receptive to the reradiated signal for comparitively [sic] long intervals between transmitted pulses.

In these intervals between transmitted pulses, the duplexing system passes the return or reradiated signal as well as the transmitter pulse into the receiver (9). This signal is amplified, i. e. increased in magnitude without changing its frequency. Part of the amplified signal is sent to a monitor cathode ray tube (10) which, as the name implies, is used to check on its performance, and detect breakdowns. The remainder of the amplified signal is sent to a PPI cathode ray tube (11) (plan-position indicator tube) appearing as a "trace" (or line) on the screen of the tube. Time calibration signals or "pips" from the time base generator are impressed on the PPI tube to permit determination of the reflection interval and the deflection of the cathode beam is synchronized with the rotation of the aerial. Hence it is possible to read the "trace" with respect to distance and direction.

## PERFORMANCE

6. The involved radar equipment, Type 268 cannot discern targets at less than two hundred and fifty (250) yards.

7. At ranges or distances greater than one thousand (1,000) yards said Type 268 radar cannot discern between two targets which are less than two hundred (200) yards apart. They will appear as a single target.

8. Range readings i. e. distance measurements obtained with the Type 268 radar for targets approximately six thousand (6,000) yards distant are subject to six and six tenths percentum (6.6%) error and for targets approximately thirty thousand (30,000) yards distant are subject to three and three tenths percentum (3.3%) error.

9. Subject to the errors indicated the radar type 268 will give a measure of both the distance to and direction of a target from which a signal is reradiated.

10. The radar equipment involved in this case rectifies, modifies, controls and distributes electrical energy.

The rectification is accomplished in the power supply network which includes three rectifier circuits for providing from a 115 volt 500 cycle alternating current supply, a D. C. voltage for operation of the set.

The modification is accomplished in the modulator which receives a negative-going distorted square wave from the delay circuit and shapes this square wave to produce a positive-going pulse of a duration of about 6 to 8 microseconds.

The control is accomplished in the automatic voltage regulator which receives a 300 volt or greater unregulated input and provides 150 volts regulated output. Also a negative 650 volt unregulated input is regulated to a negative 300 volt regulated output.

The equipment distributes electrical energy in the form of a pulsed oscillation channeled through the duplexing system to the aerial where it is radiated in a direction determined by the orientation of the aerial at that instant.

11. The radar equipment involved in this case transmits and receives signals by means of electrical waves without a connecting wire; the transmission being accomplished by the generation of a pulse oscillation channeled through the duplexing system to the aerial where it is radiated from the aerial, the aerial also acting to pick up reradiated impulses which are again channeled through the duplexing system to the receiver.

12. The term "radar" was coined by the U. S. Navy in 1941 to describe equipment for *r*adio *d*etection *a*nd *r*anging, the word being formed from the letters italicized.

The issue presented is one of relative specificity between the provisions of paragraphs 353, as modified, and 368, above referred to.

In support of the collector's classification the defendant rests upon the decision of the appellate court in *United States* v. *R. W. Cramer & Co., Inc.*, 22 C. C. P. A. (Customs) 45, T. D. 47049.

It appears from the opinion of the court in that case that it was primarily concerned with the dutiable classification of certain devices consisting of electric automatic time switches and accompanying cases, which were stipulated to be "manufactured and used solely for controlling and distributing electrical energy." Those facts, the court stated, brought the articles directly within the scope of the language of the first subdivision of paragraph 353, Tariff Act of 1930, as "All articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy." The court was also of the opinion that they satisfied the language of paragraph 368 (a) of said act, reading "any mechanism, device, or instrument intended or suitable for * * * performing any operation or function at a predetermined time or times * * *." It appears further from the opinion of the court in that case that the devices there under consideration were used for operating many kinds of electrical circuits, such as electrical advertising signs, electric signals, electric airway beacons, electric thermostatic devices, and so forth. Upon the facts in the case, the court was of the opinion that neither of the

quoted provisions with which it was there concerned was more specific than the other with respect to the involved articles; that the language quoted from paragraph 353 was more specific as regards the *material* of which they were composed, and in that it deals only with electricity; that the language of paragraph 368, *supra*, was more specific in the particular *function* which it performs, and that each of the provisions was a classification by *use*. Finding that the competing provisions were of equal specificity, the court invoked the provision in paragraph 1559 of said act (19 U. S. C. § 1001, par. 1559), which requires that, in such circumstances, that paragraph shall apply to the classification of imported articles which imposes the higher rate of duty.

In the case before us, it seems not to be disputed by the parties that with respect to certain of the uses of the importation it responds to the quoted language of paragraph 368, *supra*, in measuring distance. However it is evident that the imported article answers the call of paragraph 353, as modified, *supra*, with greater specificity in that it deals essentially with electricity and in the following respects which have been stipulated by the parties:

1. The type 268 equipment is a surface-warning radar set. Its primary function is to aid in the detection of surface craft within a relatively small range, depending upon the size of the detected vessel, and to give fairly accurate information about their range and bearing. It may also be used as an aid to navigation by determining coastal outlines.

2. There are two types of radar systems; namely, pulse radar and c-w or continuous wave radar. The type 268 radar here involved is of the pulse type.

3. In the pulse radar system sharp bursts of radio energy are sent out, i. e., transmitted. When these bursts or "pulses" encounter a reflecting object, they are reflected as discrete pulses which are detected by the radar receiver during the interval between the transmitted pulses.

4. The radar equipment involved in this case rectifies, modifies, controls, and distributes electrical energy (the language contained in a provision of said paragraph 353).

5. Said radar equipment transmits and receives signals by means of electrical waves without a connecting wire; the transmission being accomplished by the generation of a pulse oscillation channeled through the duplexing system to the aerial where it is radiated from the aerial, the aerial also acting to pick up reradiated impulses which are again channeled through the duplexing system to the receiver.

With the contention of the defendant in its brief that—

It is therefore clearly apparent that obtaining the distance to and direction of the target is the primary function of the imported device, and that all its other functions are merely the means to accomplish this end.

we are not in accord. Rather it is evident from the stipulated facts that while, in a sense, the device measures distance, that is an incident to its primary function which is to aid in the detection of surface craft within a given range depending upon the size of the detected vessel, "and to give fairly accurate information about their range and bearing," and further "It may also be used as an aid to navigation by determining coastal outlines."

From a careful analysis of the facts of record before us, we are clearly of the opinion that the importation in controversy responds to the provisions of paragraph 353, as modified, *supra*, with much greater particularity than it does to the terms of the provision in paragraph 368, *supra*.

Therefore, we hold that the importation in controversy described on the consular invoice as "1 set Type 268/RXF Radar equipment" is properly dutiable at 25 per centum ad valorem within the purview of paragraph 353 of said act (19 U. S. C. § 1001, par. 353), as modified by the trade agreement between the United States and the United Kingdom, effective January 1, 1939, 74 Treas. Dec. 253, T. D. 49753, which enumerates "Electrical signaling, radio * * * apparatus, instruments * * *, and devices, * * * and all other articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, and articles having as an essential feature an electrical element or device." The claim of the plaintiff for classification in paragraph 353, as modified, *supra*, is sustained. All other claims are overruled.

Judgment will be entered accordingly.